FINCH *v.* RUSSELL.

Opinion delivered November 24, 1930.

*Caraway, Baker & Gautney,* for appellant.

*Dudley & Dudley* and *C. T. Carpenter,* for appellee.

BUTLER, J. The appellant, C. B. Finch, was the owner of 220 acres of woodland on which there were no

improvements except a dwelling house. He was desirous of putting this land in cultivation, and on the first day of January, 1928, entered into an agreement with the appellee, J. I. Russell, by which the latter was to move into the dwelling house upon the land and clear twenty acres of land in the early part of 1928 before the time for planting a crop. In 1929 he was to clear forty acres of land, more or less, and so on each year until the entire tract had been placed in cultivation. For clearing the land he was to receive $8 per acre and the use of the land cleared for one year, after which time he was to pay $8 per acre for such land as had been used by him one year and $10 an acre thereafter. Finch was to build from time to time such tenant houses as were needed and as the land was cleared ready for cultivation. In 1928 Russell cleared and made ready for the plow thirty-five acres of land, but cultivated in that year eighteen acres only of the land cleared. In 1929 he cleared forty-three acres of land and cultivated the entire thirty-five acres cleared in 1928, and eleven or twelve acres of the land cleared in 1929. Finch did not erect any tenant houses in the spring of 1928 or at any time in 1929, although Russell testified that he would repeatedly ask him to build tenant houses so that Russell might secure tenants to cultivate the land cleared as he was able only to cultivate a limited acreage himself.

There was a settlement between the parties in November, 1929, in which a disagreement arose as to the amount of rent Russell owed, Finch claiming that in 1929 he was due $8 per acre for the entire thirty-five acres cleared in 1928, while Russell claimed that under the contract he was to pay rent only on such land as he had cultivated one year and as he had only cultivated eighteen acres of the land cleared in 1928 he owed rent only on that number of acres for its use in the year 1929 at $8 an acre; and that his failure to cultivate all of the land cleared in 1928 was occasioned by the neglect of Finch to build a tenant house. This disagreement resulted in

Finch giving Russell notice to quit and surrender the property and in the filing of a complaint in unlawful detainer on January 13, 1930, for the possession of the land and to recover $50 rent money alleged to be due, followed by the eviction of Russell from the land by the sheriff. On February 3, 1930, Russell answered denying the allegations of the complaint and that he had breached any of the terms of the contract, and alleging that he was ready and willing to continue in the performance of the same, and by way of cross-complaint claimed damages in the sum of $2,500 for the breach of the contract by Finch and for damages sustained on account of his eviction from the premises. There was a trial of the issues joined and on the 6th day of February, 1930, the jury returned a verdict in favor of the appellee Russell on his cross-complaint in the sum of $309.08 upon which judgment was accordingly rendered. From that judgment Finch has duly appealed to this court. The appellee Russell has also taken a cross-appeal in which he seeks for a modification of the judgment by directing that the possession of the land be restored to the appellee.

The appellant contends here that the verdict is contrary to the evidence, that the court erred in its instructions to the jury on the measure of damages, and lastly that the verdict is excessive. There was a purported written contract introduced in evidence signed by the appellant, which contract was not signed by the appellee. That part of the contract about which there is a difference of opinion as to its meaning is as follows: "Party of the first part (Finch) agrees to pay J. I. Russell, party of the second part, $8 per acre for clearing 220 acres of land in section 12, township 13, range 5, beginning on the southwest 40 acres. Party of the second part agrees to clear 20 acres or more by crop time in 1928 and 40 acres each year more or less thereafter and is to have all the crop free of rent. Party of second part agrees to pay party of first part eight dollars ($8) per acre cash rent for all cleared land for the second year and ten dollars

($10) per acre thereafter if conditions warrant, or party of the second part can turn the said cleared land back to party of the first part and continue on with his contract.''

The appellee testified that he understood the contract to be that by the expression ''and is to have all the crop free of rent'' and by the further expression ''party of the second part agrees to pay party of the first part $8 per acre cash rent for all cleared land for the second year'' that he was to receive $8 per acre for clearing the land and the first crop grown thereon free of rent, and that the second year thereafter he was to pay $8 per acre. It was the contention of the appellant that by these expressions in the contract he meant that appellee should receive $8 per acre for clearing the land, with the privilege of cultivating it in the same year in which it was cleared free of rent, and that, regardless of whether the cleared land was thus cultivated or not, he was to receive $8 per acre rent for it the year following the one in which it was cleared. We are of the opinion that the contract is ambiguous in these particulars, and the court properly submitted it to the jury for determination under the testimony and surrounding circumstances as to what was really intended.

There was evidence to the effect that the appellee lost the use of seventeen acres of land cleared in 1928 and thirty-two acres cleared in 1929 because of the failure of the appellant to provide tenant houses as had been agreed; that on similar land which he had been able to cultivate himself and which was cleared by him in the years mentioned he had produced a bale of cotton per acre. It was also in evidence that the appellee without fault on his part was wrongfully evicted from his home in severe weather to which his family and stock were exposed, and that the moving of his household furnishings, implements and feed for his stock, etc., was done at some expense; that he was forced to expend $5 up to the time of the trial for a temporary shelter for himself and family, and that his stock during all of the time from his

eviction were exposed to the weather without shelter. There is no testimony as to the amount of damages in dollars and cents to the farm animals, by reason of such exposure or of the cost incurred in moving after the eviction, but for all of this and for the loss of the use of the land which appellee had cleared the jury allowed only the sum of $309.08. While we do not wish to be understood as approving the form and verbiage of the instructions given by the court to the jury on the measure of damages, we do not think the jury was misled by them or that the appellant was prejudiced thereby. On the whole case we are of the opinion that the evidence sustained the verdict.

As the appellee was awarded damages for loss of the use of the land, in accordance with the prayer of his complaint, the court properly overruled his motion for modification of the judgment restoring him the possession, for that contention is inconsistent with the relief prayed and awarded.

Affirmed.